Good morning, your honors. My name is Mark Hollister, and I represent Appellant R&O Construction Company. The general contractor hired by the Appellee, West Charleston Lofts, to construct a 41-unit condominium project in Las Vegas, Nevada. And this dispute involves the final payment due under that contract in the amount of $682,000. Has all the work been completed yet? It has not, no. Still haven't paid? Still haven't paid. It's a live case, right? It is, and we're in arbitration to resolve the disputes over who's responsible for the problems. And those proceedings are scheduled for next month. This appeal is from the district court's order expunging R&O's liens in the amount of the final payment as premature on the grounds that final payment was not due under the contract. Now, R&O contended at the district court level that the work, the project was completed in September 19, 2008, which required the center of the statute to file our liens in order to preserve them on or before January 2, 2009. And the owner of the project argued that the work was not complete in September 2008 because the stone facade was defective and that the contract required that R&O fix that before final payment was due under the contract. And there is no dispute that the stone facade is defective, but there's a hotly contested dispute over what the cause of the problem was, whether it was a construction defect or a design defect. There was a certificate of occupancy that was issued before the defect came to light. That's true. Is that unusual that you would have a certificate of occupancy issued before all the work is complete? I think there's a tension to start selling these units. The owner wants to start selling them as soon as possible. And so I think that's why that was done, is while there was still work to be completed on the common areas, the individual units were being completed. And we did the exterior contracting. They had a different contractor doing the exterior units. Were people moving in before the common area work was completed? Yes. Yes. And what's your view of the statute? Are you saying basically when a certificate of occupancy is issued that that trumps whatever the parties say in their contract? With respect to final payments, we believe that it does. And that Section 620, which says that after a certificate of occupancy is filed, there's a 30-day period where you either make your final payment or you do a written notice of withholding. And I know that wasn't done here, but if that was done and the owner or developer withheld payment because of these problems, would you be able to file a mechanics lien? If a certificate of occupancy was filed. Was issued and there was a notice of withholding, would you be able to file a mechanics lien then? I believe you would be able to, Your Honor, because I believe the Nevada statute does not require that final payment be due in order to file a lien. And I'm not aware of any cases where a lien was expunged on that ground. And I think that that's why you have that statute there, because at the very end you have disputes over whether it's finished or whether it isn't. I think the contractor needs to be able to file that lien. And all the lien does is give notice to the third party that doesn't mean they're entitled to payment. If there are defects in a lien enforcement action, those defects can be argued and offset against the lien. But the lien becomes superior to the lease, doesn't it? Yes. Recording. Yes, it does. And it clouds the individual condo owner's property, right? It does. But I think that's the purpose of the statute. If the contractor hasn't been paid, they want an expeditious way of letting that get on the public record so those owners know that we still have this problem to resolve. So we believe there's three grounds on which the district court erred here and struck this lien as frivolous, expunged the lien as frivolous. And the first is that there's this hotly contested dispute over whose fault it was. And if the defect was not a construction defect and we prevail in arbitration, then the liens should have been able to file because final payment was due. And because of the existence of that dispute, the lien wasn't frivolous. Now, if we don't prevail on that, no harm, no foul. But if we do, if we prevail in arbitration, we'll effectively be without a remedy because we do not believe that the new owners who purchased those units are bound by the assurances of WCL to the district court that we can file a lien after the facade is fixed. We think they've made that representation. But with respect to those owners, we don't think they're bound. And we believe that the very finding in arbitration which would allow us to prevail, that it wasn't our fault, that it was complete in September, those owners of the 35 units will be able to use against us and say, well, you can't file your liens because they're untimely. And that's the dilemma that was created. And that's why we believe the statute allows, sets up this early process on final payments and you either do your dollars of withholding or you make the final payment. But in any event, the lien can be filed so as the units are being sold, the owners know what they're up against and those issues can be resolved. So those are the two bases. One, there's an issue of fact as to who was at fault. If we weren't at fault, we believe that we were entitled to file the lien because payment was due. Under the statute, section 620, regardless of who's at fault, the Nevada legislature has said that process commences upon the notice, filing of a certificate of occupancy and it commenced and therefore the payment was due under that theory. And then we think there's a third point, which is that even assuming final payment was not due, I'm not aware of any provision in the contract or in Nevada law that requires final payment before you can file a lien. In fact, there's language in section 108222 which says that a lien arises for work performed or to be performed. Now, in this case, the work we contend was performed. The stone was put up. What we have is an issue of was it effective or not. But we don't believe Nevada law requires in the first instance that the payment has to be due before you can file a lien. And that's where we think the district court was led into error, is this argument that there will be no harm here if you simply expunge the lien because R&O can file that lien at a later time. We don't believe that that representation was binding on the 35 unit owners. And it's more, you know, that's a substantial portion of the project and you have to apportion these liens by partial, by unit number. And so we'll effectively be without a remedy if we prevail at arbitration because we don't believe we can pursue a lien against those owners at that time. And so we would submit that any contract provision that can be construed in a multi-unit project as this one was, as preventing the filing of a lien, while the clock is running with respect to these new purchasers, because remember there's a separate provision in Nevada law which says that when you file a notice of completion and present it to a new purchaser and that notice of completion is served on the contractor, in this case they weren't. They weren't served on us, so that wasn't effective. But what typically is going to happen in these situations is they're going to have notices of completion, they're going to serve them properly, then you've got a 40-day clock running. And if you have a contract that says, well, contractor, you can't file your lien against a project until the common area is finished, and often it takes a while to finish the common area, and they do move people in before that. In that situation, that contract provision, if enforced, is effectively going to circumvent the lien rights of contractors and would wreak havoc in these types of situations. So for that reason, we respectfully submit that the lien should have been reinstated. What's the status of the project right now? Is it virtually complete or not? I believe that they are still fixing or looking for a remedy for the façade. For the tower? Yeah. Is that the only problem? Mr. Flansburg, he represents the owner. To my knowledge, I believe the other defects have been fixed, but I'll leave that to him. Thank you. Thank you. May it please the Court. Frank Flansburg and Jason Gerber, law firm Marquee & Arbach, on behalf of the affiliate. A contractor has no right to a payment that they have not earned yet, and that was the basis of the district court's decision to release the lien pursuant to NRS 108, even considering NRS 624, which I would like to focus on for my arguments today unless otherwise directed by the Court. NRS 108.222.1 allows a lien claimant to lien for the unpaid balance of a work pursuant to the contract for the work performed to be performed or materials furnished or to be furnished. In this case, the contract between the parties, Section 9.10.1.1, sets forth that the final payment is not due until the completion of the major punch list items. It's undisputed that the major punch list items were not complete. As a result of that, there was no unpaid balance because the payment wasn't due. R&O suggests, however, that the to-be-performed portion of the statute suggests that the total contract price can be liened without respect to the completion of the work triggering that payment. That's simply not true, and that's a misnomer. Because if we think about it hypothetically, take, for example, a contract between an owner and a contractor for the development of property for at the cost of $20 million, for example. Let's say in that case not a speck of dirt is moved, but there's a dispute that arises over that contract. Can the contractor then lien the entire project for $20 million? No. Of course it can't. Well, it's still work that's to be performed in the contract, but the difference is there's no unpaid balance on that contract because no work had been performed pursuant to that $20 million contract. Isn't one of the significant events in this case the certificate of occupancy? Isn't that what protects your client? In other words, it didn't seem to make sense that a contractor could file a lien before the certificate of occupancy. But once that certificate of occupancy is issued, that means the project is almost done. It's significant only for the purpose of attempting to declare the payment term void. It's not significant for NRS 108. In fact, if you take a look at how. . . How about 624, 620? I mean, if we go with your interpretation, I'm trying to think when would that provision have any effect or impact or application? Well, I think that 624, 620 allows for payment within 30 days following the certificate of occupancy. We believe that 609 still applies because a contract is still being performed. And I think that it's consistent with 620 because if you look at 609, 609 makes its term subject to 622, not 620. And what that recognizes is that a contract can still be being performed beyond a certificate of occupancy. Such is the case here. You have major punch list items which are not going to materialize until after a certificate of occupancy. And as those items are being resolved, the owner must comply with the contract terms to make the payment, which under 609 they did. And in fact, you take a look at what Arno did in this matter. Arno did not lien the project in 2007. Not even in 2008. They liened in 2009 because the certificate of occupancy was not the end of work. In fact, if you take a look at the affidavits of Slade O'Pikins at page 180 and you take a look at the affidavit of Jeff Howcroft at page 162, both of paragraph 7. Sotomayor, that seems to me to be exactly what 624, 620 paragraph, well, I don't remember the paragraph number, which permits withholding of payment if work is not finished or if work is defective. That seems to be fitting your situation to a T. That is, there's a certificate of occupancy, but it's your contention that either the work is not finished yet or that it's been defective. So why isn't that the section that applies here? And if it applies, did your client meet the notice requirement? Two points. First, it doesn't necessarily apply because if you look at the language of 624, 620, it talks about any monies unpaid. And it goes back to the analysis of whether any monies are due. In other words, if there's still performance beyond the certificate of occupancy that needs to be required pursuant to the contract, the payment's not yet due. So there's no monies. In this case, is there any work to be done other than repair of the alleged defective facing? The work that needs to be done according to the contract is completion of the major punch list items. That doesn't answer my question. I'm looking for on the ground, real world, what does the building look like? Does this contractor have anything to do in the future other than if it is the responsible party to fix the facade? No. And I apologize for not asking, answering your question directly. I think the idea is that the repairs are required, but it's completion of the major punch list items under the contract terms. But the second, and I think equally as important, Your Honor, is that when you look at 624, 620.3, and that allows a notice of withholding. Now, I would agree that there is no document that exists that says notice of withholding, but the statute is not so strict. And we know that because other portions of the statute, such as 108.226 for the notice of lien, for example, has an exact form that needs to be followed. 620. I'm having difficulty with this, though. Let's assume, it sounds to me as if you're arguing you did follow the procedure in 620 by telling them the work was no good. But if that's the case, that wouldn't result in expungement of the lien at that point. Well, and this is the problem in that 624's only issue in this case is to render the payment term, that's section 9.10.1.1 of the contract, void. Because 620 doesn't give rise to the mechanics lien rights. That's under NRS 108, and it's the performance of work. Because you can record a lien within 90 days after the final completion of the project or the last time that work was provided to the project. So there's a difference here. The only reason that the appellant has raised 624 is to declare this final payment term void. And what we're saying is that I don't think it's so strict. I think that 609 comes into play because of performance under the contract, which the parties did through October of 2008. But even if we look for evidence of withholding, there's evidence in the record that was before Judge Pro that excerpt of the record 141 is a letter from West Charleston Lofts to R&O Construction, which identifies items that are in need of repair and amounts being withheld. That communication continued between the parties and can be seen in the record at 149 and 155, setting forth the contractual basis and the authority for the withholding. Now, the reason why this is important to suggest that the withholding was met is because the purpose of the withholding as set forth in Section 2 of 620 is to make sure that the value withheld is commensurate with the value of the repair ‑‑ excuse me, value of the work remaining to be done. Because as alerted in the briefs, we don't want to ‑‑ I'm trying to understand how you think that would ‑‑ let's leave aside for just a second the specific contractual provision in this case. Is it your contention that any time that withholding has been done properly under 624.620, that there's no lien for the amount withheld that is permitted to continue, that that has to be expunged? No, that's not my contention, because I think you have to relate back to the party's contract. So in general, the fact that money is withheld for a repair that may be disputed between the parties does not result in expungement of the lien? No, it does not. That relates back to 108, because 624.620 is only to trigger the payment due, because the reason the lien was released is because work was remaining to be done at the property. And that work, according to the contract, was a condition precedent to that final payment. And because that final payment wasn't due, it wasn't an unpaid balance for which they could lien. The reason that 624.620 is brought up is to render that contract term void. And our point is, is that not only was ‑‑ is it not necessarily that strict, but there was evidence of the withholding. In fact, if you look at 129 of the record, it sets forth that table of the value of the major punch list items. And it reduces the total ‑‑ total retention, which in this case was $2 million, to 782,595, less a $100,000 good faith payment to the contractor, of $682,595 left over. The significance of that is the purpose and policy behind 624 is to make sure any money that's withheld is commensurate with the value of the repairs. That's the Venetian case. You don't hold back 100%. What do we have in the record that is definitive or agreed value of or cost of repairing the tower? There's ‑‑ Lives, labor, everything. Because it seems to me you're going to tear it down and start from scratch under some circumstances. Yes. And the most specific that you can look at is ER129. ER129 sets forth the table of ‑‑ it breaks out each punch list item and the value that was attributed to that punch list ‑‑ major punch list item. Does that include demolition and reconstruction and purchase of goods? I mean, the necessary materials? It did. Those were part of the party's discussion in establishing those major punch list item values. And ‑‑ And that work's still not completed. That's correct. If you were to take a look at the towers today, there was no stone on the towers at all. So when we look at the purpose of 624.620 ‑‑ It seems to me if there's no stone on the tower, the owner isn't responsible for paying for it. Yes, exactly. That there's still work remaining to be done under the contract for which the payment needs ‑‑ the payment does not yet need to be made. And 624.620 doesn't change that because that contractual term is actually ‑‑ is exactly right, that as long as work is remaining, the payment's not due. And 624.620 doesn't affect that in this case because the purpose was complied with in that the parties had reduced the $2 million retention to only the value of the major punch list items. And when we look at the conduct of the parties, how they performed in this agreement, they went through October 2008 still working at the project. And there's no better evidence to acknowledge that there's still work to be done at the property than ER 28. I have a sort of what's probably going to seem like a really off‑the‑wall question. This case has been ordered to arbitration with respect to the responsibility for fixing the exterior of the tower. Is the issue that is before us an arbitrable issue that should have been or should be part of the arbitration itself? I don't think so. I say that with some reservation because generally there is a ‑‑ the arbitrability of the issues is subject to the arbitrator typically. But in this case, NRS 108.2275 provides for a direct appeal of the release of a mechanics lien. And this appeal is pursuant to that release. So I look at the two as separate. And when we look back at 108.2275 for just a moment, because I think that this is important, that the work to be performed out there, the to be performed language of 108 does not translate to the entire amount being due. Because you take ‑‑ let me give you another quick hypothetical. A supplier who provides 40 bathtubs for the units, they deliver 20 of them to a contractor to be installed at the property. Let's say there's a dispute that arises and those 20 tubs are not installed. That supplier has the right to lien for those 20 tubs because they were delivered, the payment was earned for the supplier, but yet they were not installed at the project yet, so they were to be furnished for the project. The other 20 tubs that are not ordered, that are not a part of the delivery to the contractor yet, that payment is not yet earned, and that's not a lienable amount. And you have the exact ‑‑ Has the material been delivered to the ‑‑ was that material in this case ever delivered to the site? I thought that it was put up and it was no good, which is quite a different situation than your never seen 20 tubs. It is a different situation, but the example that I brought up with the 20 tubs is to show how the to be furnished language works for the statute. In this case, though, the completion of the major punch list items is the triggering for the final payment, which is the unpaid balance. Let's assume that in the arbitration, the entire responsibility for the problem lies with the design and not with the construction. What are the assurances in the absence of a lien that the contractor will be paid in full? Well, I think the contractor still has the right to lien. First, the assurances are that the owner has ‑‑ How is that possible in a timeliness sense? In a timeliness sense, the NRS 108226 provides that a lien can be recorded within 90 days after, one, the completion of the work, or two, within 90 days of the last time work is provided. Work is still going on at the property to address these major punch list items. As long as that work is ongoing at the property, there's still an opportunity to lien within 90 days. I see that my time is up. May I complete my response? Yes, please. Thank you, Your Honor. Within 90 days from the completion of that work, there will still be the opportunity to lien. Similarly, if an arbitrator were to determine that the final payment is due, that would also trigger the final completion of the contract, and West Charleston would have 30 days within which to pay. If they did not, they would have 90 days within the final completion date to record the mechanics lien. So 108226 provides both 90 days after the last work performed, which is still ongoing, that's the reason why it's premature, and the final completion, which is not yet determined until the final payment is due. Thank you, counsel. Thank you, Your Honors.  Thank you, Your Honors. Our concern here, to address the issue that was responsive to the last question, is that our whole argument is final work was complete, and that these defects are going to be resolved in arbitration. And the very same argument that Mr. Flansburg's clients asserted against the interior contractor, who came in and did some work later and hadn't filed liens, and then argued, well, the work wasn't done, they argued, no, no, no, that was repair work, and so your lien time has expired. We think that the owners, the individual owners who purchased these 35 units, are going to take that same argument and use it against us. What is your view of the question, my off-the-wall question about arbitration? Is this an issue that is properly folded into the arbitration, or is it necessarily or permissibly separate? I think it is separate, because the issue here is whether or not we can file a lien. And that's one of the problems with striking this lien, or expunging this lien. If you have to get to the merits of that issue, which you obviously do because it's in arbitration, then you ought to be able to expunge the lien. The lien may be held to be invalid after the arbitration findings, but what is the harm in having that lien there and giving notice to everybody? And that seems to me what the legislature wanted to do. At the end, and here's a key point, they keep relying on 609 to say that you can, by contract, alter the payment terms. 609 deals with, and is titled, payment during performance. 620 is titled payment for work after available for occupancy. And 620 does not have the 609 provision where it's alterable by contract. It has the opposite provision. It says any contract provision that attempts to alter this procedure in 620 is void as against public policy. And I think that's because when the project nears completion and people are scrambling to get their money and people are making decisions about buying new units, that's when we need to get everything on the table, get the liens of record if they're there, and that's why that procedure is in place. If a lien is filed, where does the rental income go? I don't think the filing of a lien has any effect on that at all. That just preserves your right against the property. You would not have the right to collect rent? No. I believe you'd have to do a lien foreclosure action before you got that right. So, again, I'll ---- If you got into foreclosure, you'd have the defense of defective work, wouldn't you? You would. And that's where you are right now. And that's exactly how this should have happened, is the lien should be of record and we're having this defective work arbitration. If we prevail, we will be able to recover against the property because those liens are there. If the liens are not reinstated and we win at arbitration, we really lose because the very finding that we used to win at arbitration will be used by the 35 owners to say, you're untimely. And that's the problem here. And that's why we believe that the district court was led into error by assuming there would be no harm if the liens weren't filed because we could reinstate them. That's the problem. If you reinstate them, and if we lose at arbitration, the liens are ---- they just offset all the damages. I mean, it's possible that we could have the liens, and if we don't prevail at arbitration, no amount's owing. But it's the alternative case of us succeeding and then being deprived of the statutory remedy, which is why we respectfully submit that the district court was in error and that that decision should be reversed and the liens reinstated. Thank you, counsel. We appreciate very helpful arguments from both counsel. The case just argued is submitted and we are adjourned.
judges: Carney, Beezer, Graber